UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     -against-

CHRISTOPHER COLLINS,
CAMERON COLLINS, and
STEPHEN ZARSKY,

        Defendants.

18 Cr. 567 (VSB)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR A BILL OF PARTICULARS

CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
*Attorneys for Cameron Collins*


BAKER HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
*Attorneys for Christopher Collins*


DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
*Attorneys for Stephen Zarsky*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ..................................................................................................................... 5

      A.     The Defendants Are Entitled to Specification of the Wire
           Transmission Serving as the Basis for the Wire Fraud Count ............................... 7

      B.     The Defendants Are Entitled to Specification of the Acts that
           Allegedly Occurred in the Southern District of New York ................................. 10

      C.     The Defendants Are Entitled to Identification of the "Others"
           Whom They Allegedly Anticipated Would Trade on Material,
           Nonpublic Information .......................................................................................... 12

      D.     The Defendants Are Entitled to Specification of the Personal
           Benefit They Allegedly Expected to Receive as a Result of the
           Alleged Disclosure of Material, Nonpublic Information ....................................... 15

CONCLUSION ................................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Dirks v. Securities and Exchange Commission*,
    463 U.S. 646 (1983)..........................................................................................16

*Salman v. United States*,
    137 S. Ct. 420 (2018)........................................................................................16

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987)................................................................... *passim*

*United States v. Carpenter*,
    791 F.2d 1024 (2d Cir. 1986), *aff'd*, 484 U.S. 19 (1987) ................................15

*United States v. Goffer*,
    529 Fed. Appx. 17 (2d Cir. 2013) ....................................................................15

*United States v. Martoma*,
    894 F.3d 64 (2d Cir. 2018)...............................................................................16

*United States v. Martoma*,
    869 F.3d 58 (2d Cir. 2017)...............................................................................16

*United States v. McDermott*,
    245 F.3d 133 (2d Cir. 2001).......................................................................14, 15

*United States v. Newman*,
    773 F.3d 438 (2d Cir. 2014).......................................................................16, 17

*United States v. Panza*,
    750 F.2d 1141 (2d Cir. 1984)..............................................................................6

*United States v. Shellef*,
    507 F.3d 82 (2d Cir. 2007).................................................................................8

*United States v. Vilar*,
    729 F.3d 62 (2d Cir. 2013)...............................................................................10

*United States v. Castellano*,
    610 F. Supp. 1359 (S.D.N.Y. 1985)............................................................11, 12

*United States v. Kahale*,
    789 F. Supp. 2d 359 (E.D.N.Y. 2009), *aff'd sub nom.*, *United States v. Graham*,
    477 Fed. Appx. 818 (2d Cir. 2012) ....................................................................6

*United States v. Long*,
   697 F. Supp. 651 (S.D.N.Y. 1988) ...................................................................11

*United States v. McGuinness*,
   764 F. Supp. 888 (S.D.N.Y. 1991) ..................................................................9

*United States v. Motta*,
   No. 15 Cr. 173 (NSR), 2015 WL 4692462 (S.D.N.Y. Aug. 6, 2015).................8

*United States v. Nachamie*,
   91 F. Supp. 2d 565 (S.D.N.Y. 2000).................................................................9

*United States v. Rajaratnam*,
   No. 09 Cr. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ..........6, 7

*United States v. Reale*,
   No. 96 Cr. 1069 (DAB), 1997 WL 580778 (S.D.N.Y. Sept. 17, 1997)..............8

*United States v. Savin*,
   No. 00 Cr. 45 (RWS), 2001 WL 243533 (S.D.N.Y. March 7, 2001) .................9

*United States v. Silver*,
   117 F. Supp. 3d 461 (S.D.N.Y. 2015)................................................................8

*United States v. Stein*,
   429 F. Supp. 2d 633 (S.D.N.Y. 2006)..............................................................11

*United States v. Szur*,
   No. 97 Cr. 108 (JGK), 1998 WL 132942 (S.D.N.Y. March 20, 1998) ............11

*United States v. Urso*,
   369 F. Supp. 2d 254 (E.D.N.Y. 2005) ...............................................................7

*United States v. Wilson*,
   No. 01 Cr. 53 (DLC), 2001 WL 798018 (S.D.N.Y. July 13, 2001)..................11

*United States v. Zandstra*,
   No. 00 Cr. 209 (RWS), 2000 WL 1368050 (S.D.N.Y. Sept. 20, 2000) .............8

**Constitutional Provisions**

U.S. Const. amend. VI ...............................................................................................6

**Statutes**

18 U.S.C. 1343.................................................................................................................................8

**Other Authorities**

Fed. R. Crim. P. 7(f) ......................................................................................................................5

## PRELIMINARY STATEMENT

This case involves allegations concerning two series of events.  First, in June 2017, a group of people located in Washington, DC; New Jersey; and Florida allegedly tipped, or traded on the basis of, material, nonpublic information regarding the drug trial results of an Australian company that has no alleged presence in the Southern District of New York.  Second, in April 2018, Christopher Collins ("Rep. Collins"), Cameron Collins, and Stephen Zarsky (collectively, the "Defendants") allegedly made false statements to FBI agents – again while outside this District – about their information and trading in June 2017.

Despite the constant refrain of allegations that the relevant conduct occurred "in the Southern District of New York and elsewhere," the Indictment does not allege a single act in this District.  No passing of information in this District, no wires into or out of this District, no trade orders placed or executed in this District, and no false statements made in this District.  Not one.

Because the Indictment fails to specify any of this information, the Defendants are forced to guess which (if any) acts could serve as the basis for venue in the Southern District of New York and which (if any) interstate wire could serve as the basis for the wire fraud count.  Additionally, the Indictment spins a complicated web of alleged personal and familial relationships, but it offers Defendants zero guidance as to the government's specific allegations regarding Christopher Collins's and Cameron Collins's liability for the trading of remote tippees.  Similarly, Defendants are left guessing as to what, if any, personal benefit they allegedly expected to receive as a result of the alleged disclosure of material, nonpublic information.

For these reasons, a bill of particulars is necessary to enable Defendants to adequately prepare their defense and to avoid unfair surprise at trial.  Moreover, a bill of particulars is in the interests of judicial economy (and defense resources) to avoid potentially unnecessary motion

practice concerning counts for which there may be no proper basis for jurisdiction or venue in the Southern District of New York.

## STATEMENT OF FACTS

The Indictment

The Indictment charges the Defendants with conspiracy to commit securities fraud (Count One), securities fraud (Counts Two through Eight), conspiracy to commit wire fraud (Count Nine), wire fraud (Count Ten), and false statements (Counts Eleven through Thirteen). At its core, the Indictment alleges that the Defendants and others, in or around June 2017, engaged in a scheme to defraud that involved: (i) the dissemination of material, nonpublic information regarding Innate Immunotherapeutics Limited ("Innate"); and (ii) the sales of Innate shares prior to the public announcement of Innate's drug trial results.  Indictment ¶ 10.

Specifically, the Indictment alleges that on June 22, 2017, Rep. Collins, a member of Innate's Board of Directors, while in Washington, DC, *id.* ¶ 21, received material, nonpublic information regarding negative trial results for Innate's developmental drug, MIS416, *id.* ¶ 20. The Indictment alleges that shortly after receiving this information, Rep. Collins passed it to his son, Cameron Collins.[1]  *Id.* ¶ 23.  While the Indictment alleges that Rep. Collins disclosed the drug trial results to Cameron Collins so that Cameron Collins could use that information to sell his Innate stock and "tip others," it does not specify the "others" whom Rep. Collins anticipated Cameron Collins would tip.  *See id.* ¶ 10.  Moreover, the Indictment fails to allege that Rep. Collins even knew of the existence of CC-3, CC-4, CC-5, or CC-6, much less that they owned shares of Innate stock.  Likewise, the Indictment does not allege that Rep. Collins knew that Mr. Zarsky, CC-1, or CC-2 owned shares of Innate stock.  In light of these omissions, the Indictment

---

[1] Based on discovery provided by the government, Cameron Collins was located in New Jersey at the time of this alleged communication.

fails to allege the nature of any personal benefit that Rep. Collins expected to receive from the alleged actions.

According to the Indictment, Cameron Collins subsequently sold Innate shares on June 23, 2017 and June 26, 2017, prior to Innate's public announcement of the drug trial results. *Id.* ¶¶ 25-27. The Indictment further alleges that Cameron Collins passed the material, nonpublic information regarding the drug trial results to Stephen Zarsky, co-conspirator CC-1, co-conspirator CC-2, and co-conspirator CC-6 so that they could sell their Innate stock and "tip others."[2] *Id.* ¶¶ 4-6, 10, 28. However, the Indictment does not specify the "others" whom Rep. Collins and Cameron Collins anticipated Mr. Zarsky would tip, nor does it allege the nature of any personal benefit Rep. Collins and Cameron Collins expected to receive. *See id.* ¶ 10. The Indictment alleges that Mr. Zarsky, in turn, passed the material, nonpublic information to co-conspirator CC-3, co-conspirator CC-4, and co-conspirator CC-5 "so that they too could engage in timely trades in Innate stock,"[3] *id.* ¶¶ 5, 10, 35, but it again fails to allege the nature of any personal benefit Mr. Zarsky expected to receive, *see id.*

The Indictment also alleges that the Defendants made false statements to FBI agents during individual interviews that took place on April 25, 2018.[4] *Id.* ¶¶ 53-64.

For each count, the Indictment alleges that the relevant conduct took place "in the Southern District of New York and elsewhere." *Id.* ¶¶ 43 and 45 (Count One), 47 (Counts Two

---

[2] Based on discovery provided by the government, at least four of these individuals, including Cameron Collins and Mr. Zarsky, were located in New Jersey at the time of the alleged communications. Moreover, nothing in the discovery indicates that the other individual, who lived and worked in New Jersey during the relevant time, was located in the Southern District of New York at the time of the alleged communications.

[3] Nothing in the discovery indicates that any of these individuals (none of whom was a New York resident during the relevant time) was located in the Southern District of New York at the time of the alleged communications.

[4] Based on discovery provided by the government, all three of the Defendants' interviews by FBI agents took place outside the Southern District of New York.

through Eight), 49 (Count Nine), 52 (Count Ten), 56 (Count Eleven), 60 (Count Twelve), 64 (Count Thirteen).  However, the 29-page speaking Indictment does not specify a single act, trade, wire, or other event that touched the Southern District of New York.  Moreover, with respect to the wire fraud allegation (Count Ten), the Indictment fails to specify the interstate (or foreign) wire that was allegedly transmitted or caused to be transmitted by the Defendants in furtherance of the alleged scheme to defraud, regardless of where it was transmitted from or to.  *See id.* ¶¶ 51, 52.  Incredibly, the Indictment does not even allege which states (or countries) the purported wire originated in, traveled through, or terminated in.

<u>Discovery, Discovery Requests, and Related Discussions</u>

The Defendants have received voluminous discovery in this matter.[5]  For example, the government has produced to Cameron Collins approximately 257,000 documents consisting of over 450,000 pages, as well as approximately 77 GB of additional data (which cannot be quantified in terms of documents or pages) collected from electronic devices and iCloud accounts.[6]  The discovery materials include bank statements, trading records, phone records, emails, text messages, and other documents.  As part of this discovery, the government has also produced to the Defendants several law enforcement documents, including but not limited to 24 search warrants, six 2703(d) orders, and four pen-register orders.

---

[5] The total amount of data varies by Defendant because of differences in the amount of data produced to each Defendant and the way each Defendant processed the data received.
[6] These numbers include discovery produced to each Defendant by the Securities and Exchange Commission (the "SEC").  Pursuant to Judge Failla's November 9, 2018 order granting the government's motion to intervene and for a partial stay of discovery in the parallel civil action, *SEC v. Christopher Collins et al.*, No. 18 Civ. 7128 (KPF), the SEC produced to each Defendant, on January 8, 2019, over 48,000 documents consisting of approximately 342,000 pages (the "SEC Discovery").  The Defendants have undertaken efforts to de-duplicate the SEC Discovery against the discovery produced by the government and have determined that between approximately 10,000-15,000 documents in the SEC Discovery are unique.

By letter dated December 10, 2018, the Defendants requested that the government provide a bill of particulars specifying a number of allegations in the Indictment.  The government responded by letter dated December 28, 2018.  While the government's letter provided limited responses to certain requests by the Defendants, the government stated that it "does not believe that a bill of particulars is necessary in this case" and refused to respond to the remainder of Defendants' requests.  Defendants' counsel met and conferred with the government in an effort to resolve the bill of particulars request, but despite good faith efforts to do so, were unable to reach a satisfactory resolution.

## <u>ARGUMENT</u>

Given the inadequacies of the Indictment, the Court should order, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, the government to provide a bill of particulars identifying:

a.   the date, time, sender, recipient(s), locations, and amount (if applicable) of the wire communication serving as the basis for the wire fraud alleged in Count Ten;

b.   for each count charged in the Indictment, every act in furtherance of that count committed in the Southern District of New York;

c.   the "others" to whom Rep. Collins anticipated Cameron Collins would disclose the material, nonpublic information, as alleged in paragraphs 10, 23, and 45(a) of the Indictment;

d.   the "others" to whom Rep. Collins and Cameron Collins anticipated Mr. Zarsky would disclose the material, nonpublic information, as alleged in paragraph 10 of the Indictment;

e.   The personal benefit expected by Rep. Collins as a result of the alleged disclosure of material, nonpublic information to Cameron Collins, Mr. Zarsky, CC-1, CC-2, CC-3, CC-5, and CC-6, that forms the basis for the securities fraud alleged in Counts Two through Eight, and whether Rep. Collins was aware of the existence of CC-3, CC-5, and/or CC-6 and whether he was aware that Mr. Zarsky, CC-1, CC-2, CC-3, CC-5, or CC-6 owned Innate shares;

    f.    The personal benefit expected by Cameron Collins as a result of the alleged disclosure of material, nonpublic information to Mr. Zarsky, CC-1, CC-2, CC-3, CC-5, and CC-6, that forms the basis for the securities fraud alleged in Counts Three through Eight, and whether Cameron Collins was aware of the existence of CC-3 and/or CC-5 and that they owned Innate shares; and

    g.    The personal benefit expected by Mr. Zarsky as a result of the alleged disclosure of material, nonpublic information to CC-2, CC-3, and CC-5, that forms the basis for the securities fraud alleged in Counts Five through Seven.

A bill of particulars is required in this case because the Indictment fails to specify certain information necessary to enable the Defendants to adequately prepare their defense. The Sixth Amendment provides every criminal defendant the right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. As the Second Circuit has stated, the purpose of a bill of particulars is to allow a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). The decision to grant a motion for a bill of particulars lies within the discretion of the district court. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).

Moreover, the complexity of this securities fraud prosecution furthers the need for the government to specify its allegations. Courts in this Circuit have recognized that "the potential for unfair surprise and the difficulty of preparing a defense are amplified" in complex conspiracy cases. *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010) (Holwell, J.); *see also United States v. Kahale*, 789 F. Supp. 2d 359, 373-74 (E.D.N.Y. 2009), *aff'd sub nom.*, *United States v. Graham*, 477 Fed. Appx. 818 (2d Cir. 2012) ("Certain charges, such as [] fraud charges . . ., by their nature carry a greater potential for causing unfair surprise at trial due to their complexity.").

Adding to the complexity of this case, the voluminous discovery, totaling over 250,000 documents and dozens of GB of additional data, presents a further challenge for the Defendants in attempting to decipher the Indictment's vague allegations.  It is not sufficient to "rely solely on the quantity of information disclosed" by the government; "sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars."  *Rajaratnam*, 2010 WL 2788168, at *2 (citations omitted); *see also Bortnovsky*, 820 F.2d at 574-75 (concluding that district court abused its discretion in denying a bill of particulars and noting that the "[g]overnment did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified"); *United States v. Urso*, 369 F. Supp. 2d 254, 271 (E.D.N.Y. 2005) (citing *Bortnovsky*, 820 F.2d at 575) ("[A] bill of particulars is appropriately granted where the government's pre-trial discovery disclosures are so voluminous that the defendant remains in the dark about the specific acts of which he is accused.").

The weight of judicial authority requires a bill of particulars in these circumstances. Accordingly, the Defendants respectfully request that this Court order the government to provide a bill of particulars specifying the allegations discussed below.

### A.      The Defendants Are Entitled to Specification of the Wire Transmission Serving as the Basis for the Wire Fraud Count

Unlike other indictments in this District alleging wire fraud, the Indictment fails to specify the wire communication serving as the basis for the wire fraud alleged in Count Ten. *Compare* Indictment ¶¶ 51-52, *with* Indictment at 36-37, *United States v. Walters*, No. 1:16 Cr. 00338 (PKC) (S.D.N.Y. May 19, 2016), ECF No. 8-1 (including a chart of four specific transactions, including dates and amounts, for the substantive wire fraud counts).  The vague allegations supporting Count Ten provide the Defendants with wholly inadequate notice of an

essential element of the wire fraud charge: the wire itself.  *See* 18 U.S.C. 1343; *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) (listing use of the wires as an "essential element" of a wire fraud violation).  Indeed, the wire itself, not the scheme to defraud, is what constitutes the gravamen of the offense.  *United States v. Reale*, No. 96 Cr. 1069 (DAB), 1997 WL 580778, at *14 (S.D.N.Y. Sept. 17, 1997) (citing *United States v. Eskow*, 422 F.2d 1060, 1064 (2d Cir. 1970)) ("It is well-settled that each use of the mail or wires in furtherance of a scheme to defraud constitutes a separate crime.").

Courts have consistently granted defendants' requests for particulars in mail and wire fraud prosecutions where the indictment does not identify the mailing(s) or wire(s) at issue.  *See, e.g.*, *United States v. Silver*, 117 F. Supp. 3d 461, 471 (S.D.N.Y. 2015) (Caproni, J.) (internal quotation marks and citations omitted) (ordering the government to provide a bill of particulars "identifying the specific mailings and wire transfers on which it will rely to prove" the mail and wire fraud charges); *United States v. Zandstra*, No. 00 Cr. 209 (RWS), 2000 WL 1368050, at *6 (S.D.N.Y. Sept. 20, 2000) (directing the government to provide "a bill of particulars identifying the approximate dates of the allegedly fraudulent mailings, and the names of the alleged victims, if known"); *Reale*, 1997 WL 580778, at *14 (granting defendants' request for a bill of particulars "identifying the specific mailings and wire transfers and the approximate dates . . . on which they occurred"); *cf. United States v. Motta*, No. 15 Cr. 173 (NSR), 2015 WL 4692462, at *2 (S.D.N.Y. Aug. 6, 2015) (denying defendants' motion to dismiss on the ground that "[a] mail fraud indictment does not need to contain a detailed accounting of individual mailings," but inviting defendants to "request a bill of particulars detailing the allegedly fraudulent mailings").

In other fraud cases, courts have similarly directed the government to specify dates, amounts, participants, and locations of transactions.  *See, e.g.*, *Bortnovsky*, 820 F.2d at 573-74

(finding reversible error where the trial court denied defendants' requests for particulars identifying which claims were alleged to be false in connection with alleged insurance fraud scheme); *United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533, at *2-4 (S.D.N.Y. March 7, 2001) (granting requests for particulars identifying dates, amounts, and account numbers for allegedly improper fund transfers); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571-72 (S.D.N.Y. 2000) (requiring bill of particulars in Medicare fraud prosecution where the government had "not yet informed the defendants which of the [submitted Medicare] claims were false and in what way they were false"); *United States v. McGuinness*, 764 F. Supp. 888, 892-93 (S.D.N.Y. 1991) (requiring the government "to furnish a bill of particulars listing the approximate date and amount of each . . . payment" alleged to be unlawful).  In *McGuinness*, the indictment alleged unlawful payments in violation of the Taft-Hartley Act and identified broad date ranges and combined dollar amounts of the various payments (e.g., multiple payments by one company from the late 1970s to December 1985 amounting to $6,000, and multiple payments by another company from 1980 to 1986 totaling $16,000).  764 F. Supp. at 891.  Citing *Bortnovsky*, the court ordered the government to specify the date and amount of *each* payment in order to provide the defendant with adequate notice of the charges against him.  *Id.* at 892-93.

The Defendants should not be forced to sift through the hundreds of thousands of pages of discovery materials, blindly searching for what *may* be the interstate wire communication that the government plans to unveil at trial as an essential element of Count Ten.  Moreover, absent specification of the particular wire at issue, the Defendants are unable to assess the validity of potential pretrial challenges to jurisdiction (whether it was transmitted in interstate or foreign commerce) and venue (whether it touched the Southern District of New York), as well as other potential defenses (e.g., whether it was in furtherance of the alleged scheme to defraud, whether

it was reasonably foreseeable, etc.).  The Indictment's omission of the specific wire also fails to provide Defendants with sufficient protection against a future prosecution for the same alleged offense.  *See United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (citation omitted) ("[A]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events.").  Put simply, the Defendants are left guessing as to which wire it could be.  Is it a phone call?  Is it an email?  Is it a trade?  Is it a transfer of funds?  Only the government knows.  If such an interstate wire exists, there is no justification for refusing to identify the wire, a critical element of the offense charged.

In light of this glaring omission and the controlling case law, the Court should direct the government to provide particulars as to the date, sender, recipient(s), locations, and amount (if applicable) of the wire forming the basis for Count Ten so that Defendants can adequately prepare to defend that charge.

**B.    The Defendants Are Entitled to Specification of the Acts that Allegedly Occurred in the Southern District of New York**

The government should also be required to identify all acts that occurred in the Southern District of New York that support the charges in the Indictment.  The Indictment merely alleges that the relevant conduct for each count took place "in the Southern District of New York and elsewhere" without identifying a single act or wire communication that touched this District. Indictment ¶¶ 43 and 45 (Count One), 47 (Counts Two through Eight), 49 (Count Nine), 52 (Count Ten), 56 (Count Eleven), 60 (Count Twelve), 64 (Count Thirteen).  This bare-bones allegation of venue requires specification in a bill of particulars to enable the Defendants to prepare for trial and to determine which substantive motions should be filed and adjudicated.

Although an indictment may sufficiently allege venue despite the absence of any statement as to the place of the crime, a "defendant should be advised of the place by a bill of particulars in order to avoid any possibility of prejudicial surprise." *United States v. Castellano*, 610 F. Supp. 1359, 1388 (S.D.N.Y. 1985) (citing C. Wright, Federal Practice and Procedure: Criminal 2d § 125, at 380–81 (1982)); *see also United States v. Stein*, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006) (citing *Castellano*, 610 F. Supp. at 1388) (stating that "a bill of particulars typically will be granted where an indictment contains no venue allegation" as to the place of the crime); *United States v. Wilson*, No. 01 Cr. 53 (DLC), 2001 WL 798018, at *6 (S.D.N.Y. July 13, 2001) (directing the government to either file a superseding indictment or provide "a bill of particulars describing facts it intends to establish at trial which it claims are sufficient to establish venue in this district"); *United States v. Szur*, No. 97 Cr. 108 (JGK), 1998 WL 132942, at *9 (S.D.N.Y. March 20, 1998) (holding that an allegation that the offense occurred "in the Southern District of New York and elsewhere" is sufficient to survive a motion to dismiss but requiring the government to provide a bill of particulars because "it [was] unclear from the Indictment what acts were committed in the Southern District of New York"); *United States v. Long*, 697 F. Supp. 651, 655 (S.D.N.Y. 1988) (citations omitted) (stating that in the pretrial stage, "it suffices for the government to allege *with specificity* that the charged acts support venue in this district" and that "if the indictment is not sufficiently specific on its face, the government may remedy the inadequacy by providing a sworn bill of particulars") (emphasis added).

In *Castellano*, certain counts of the indictment alleged that the crimes took place "in the Southern District of New York and elsewhere" but "provide[d] no basis for this allegation." 610 F. Supp. at 1389-90 (adding that "nothing in the charges suggests a connection to the Southern District"). The government claimed that it would prove venue with certain evidence at trial,

11

which evidence the court found to be "sufficient in principle," but the court nonetheless ruled that "a basis for venue must be alleged in a bill of particulars for each of the counts at issue." *Id.* at 1390 ("The government must . . . make its representations formal through a bill of particulars").

Here, as in *Castellano*, the Indictment alleges generally, without factual support, that the offenses occurred "in the Southern District of New York and elsewhere." For example, the wire fraud count, as discussed *supra*, fails to allege a specific wire that actually touched the Southern District of New York. *See* Indictment ¶¶ 51-52. Additionally, the *only* allegation in the Indictment regarding the physical location of any of the Defendants or alleged co-conspirators during the relevant time periods is that Rep. Collins was located in Washington, DC on the evening of June 22, 2017. *See id.* ¶ 21. And based on information available to the defense, none of the Defendants or alleged co-conspirators lived or worked in the Southern District of New York during the relevant time periods. Indeed, not only does the Indictment fail to specifically allege venue, but the facts affirmatively suggest that venue in this District is lacking.

In order to permit the Defendants to adequately prepare their defense, the Court should direct the government to provide a bill of particulars specifying each act that took place in the Southern District of New York. Moreover, given the potential for a pretrial venue challenge, requiring the government to identify its basis for venue *now* will preserve the Court's (and the Defendants') resources in these proceedings.

### C.     The Defendants Are Entitled to Identification of the "Others" Whom They Allegedly Anticipated Would Trade on Material, Nonpublic Information

Additionally, the Defendants are unable to adequately prepare their defense without knowing the particulars of the government's allegations regarding the scope of the agreement(s) alleged in Counts One and Nine of the Indictment. Given the vague allegations regarding the

anticipated trading by remote tippees, the particulars regarding whose trades were foreseeable to whom may impact the viability of certain counts. Accordingly, the government should be required to identify the "others" whom Rep. Collins anticipated Cameron Collins would tip, as well as the "others" whom Rep. Collins and Cameron Collins anticipated Mr. Zarsky would tip.

The Indictment alleges that Rep. Collins disclosed material, nonpublic information to Cameron Collins "so that Cameron Collins could use that information to make timely trades in Innate stock *and tip others*." Indictment ¶ 10 (emphasis added); *see also id.* ¶ 23 ("anticipating that Cameron Collins would use [the information] to trade *and tip others*") (emphasis added); *id.* ¶ 45(a) ("so that Cameron Collins could sell his Innate shares before the Public Announcement *and tip others*") (emphasis added). However, it does not identify the "others" or whether Rep. Collins even knew they existed, much less that they owned Innate securities. Similarly, the Indictment alleges that Cameron Collins tipped Mr. Zarsky, CC-1, CC-2, and CC-6 "so that they could utilize the information for the same purpose" (i.e., presumably "to make timely trades in Innate stock *and tip others*"). *Id.* (emphasis added). But again, the Indictment fails to identify the "others" and whether Rep. Collins and Cameron Collins knew they existed, much less that they owned Innate securities.

While the Indictment specifies with particularity whom Cameron Collins allegedly tipped (Mr. Zarsky, CC-1, CC-2, and CC-6) and whom Mr. Zarsky allegedly tipped (CC-3, CC-4, and CC-5), *id.* ¶ 10, it does not allege whether Rep. Collins knew these individuals or that they owned Innate securities. In short, the Indictment does not allege that it was foreseeable to Rep. Collins that Cameron Collins would tip those particular individuals, nor does it allege whether it

was foreseeable to Rep. Collins and Cameron Collins that Mr. Zarsky would tip those particular individuals.[7]

Moreover, the Indictment alleges that Rep. Collins "well knew" that Cameron Collins was a significant shareholder in Innate. *Id.* ¶ 4. But it does not allege whether Rep. Collins was aware that any of the alleged remote tippees even existed, much less owned or would trade Innate stock, nor does it allege whether Cameron Collins was aware that the individuals allegedly tipped by Mr. Zarsky (CC-3, CC-4, and CC-5) even existed, much less owned or would trade Innate stock. Indeed, the Indictment goes to great lengths to describe the close personal and familial relationships between certain Defendants and certain alleged co-conspirators, *see id.* ¶¶ 4-6, 28, 35, but it fails to allege any contact or relationships whatsoever between Rep. Collins and any of the remote tippees or between Cameron Collins and CC-3, CC-4, and CC-5.

The identification of the "others" in this context is necessary to the Defendants' preparation for trial. *See Bortnovsky*, 820 F.2d at 574 (stating that the purpose of a bill of particulars is to enable the defendant to prepare for trial). Specifically, depending on the particulars of these allegations and the government's evidence at trial, Rep. Collins and Cameron Collins may successfully argue that they are not liable for certain securities fraud counts charged in the Indictment. The Second Circuit has made clear that a defendant is not liable for the trading of an unknown remote tippee. *See United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) (finding defendant not liable for the trades made by a remote tippee whom the

---

[7] While paragraph 10 of the Indictment alleges that Cameron Collins tipped Mr. Zarsky so that Mr. Zarsky could trade *and* "tip others," Indictment ¶ 10, paragraphs 28 and 30 of the Indictment allege only that Cameron Collins tipped Mr. Zarsky so that Mr. Zarsky could trade, *see id.* ¶ 28, 30 (omitting any reference to the allegation that Cameron Collins anticipated that Mr. Zarsky would "tip others"). This inconsistency, which may or may not reflect an alteration or refinement of the government's theory, provides further support for ordering a bill of particulars specifying the government's allegations.

defendant did not know existed); *United States v. Carpenter*, 791 F.2d 1024, 1035-36 (2d Cir. 1986), *aff'd*, 484 U.S. 19 (1987) (reversing insider-trading conspiracy conviction to the extent it involved the trades of an unknown remote tippee who was not part of the conspirators' agreement); *cf. United States v. Goffer*, 529 Fed. Appx. 17, 20 (2d Cir. 2013) (finding defendant liable for trading by tippees because "the trades were reasonably foreseeable").

Here, the Indictment fails to allege with particularity any foreseeability by Rep. Collins and Cameron Collins with respect to trading by the remote tippees.  Yet the government charged Rep. Collins and Cameron Collins with securities fraud counts based on trades by these individuals, *see* Indictment ¶ 47, without even alleging that Rep. Collins or Cameron Collins knew they owned Innate shares, let alone that these individuals even existed, *see McDermott*, 245 F.3d at 138 ("[T]he proof at trial established that [the defendant] had no knowledge of [the remote tippee's] existence.").  For example, is the government alleging in Count Seven that Rep. Collins and Cameron Collins anticipated that Mr. Zarsky would tip CC-5, "a Florida-based financial advisor" who was longstanding friends with Mr. Zarsky?  Indictment ¶ 5.  If yes, the government must specify that allegation in a bill of particulars and prove it at trial.  It is not sufficient for the government to allege generally that Rep. Collins and Cameron Collins anticipated that their tippees would tip "others."  The government must specify those "others."

In order to prepare for trial, the Defendants must be apprised of the government's allegations regarding the scope of the alleged agreement(s) and whose trading was foreseeable to whom.  For these reasons, the government should be required to identify the "others" whom Rep. Collins anticipated Cameron Collins would tip and the "others" whom Rep. Collins and Cameron Collins anticipated Mr. Zarsky would tip.

**D.** **The Defendants Are Entitled to Specification of the Personal Benefit They Allegedly Expected to Receive as a Result of the Alleged Disclosure of Material, Nonpublic Information**

Finally, the Indictment fails to allege any personal benefit expected by the Defendants as a result of their alleged disclosure of material, nonpublic information to their alleged tippees. The Indictment's casual disregard of this essential element of the securities fraud counts precludes the Defendants from adequately preparing their defense and leaves them vulnerable to unfair surprise at trial.

In the context of insider-trading prosecutions, the Supreme Court has held that the government must prove that the tipper expected to receive a "personal benefit" in exchange for the information he provided to the tippee. *Dirks v. Securities and Exchange Commission*, 463 U.S. 646, 663 (1983). Such a personal benefit may take the form of "pecuniary gain" (e.g., a share of the proceeds), or it may be inferred when the tipper "makes a gift of confidential information to a trading relative or friend." *Id.* at 664 (stating that "[t]he tip and trade resemble trading by the insider himself followed by a gift of the profits to the recipient").

Within the last five years, the Second Circuit and the Supreme Court have issued four significant decisions attempting to clarify the personal benefit requirement. *See United States v. Newman*, 773 F.3d 438 (2d Cir. 2014); *United States v. Martoma*, 869 F.3d 58 (2d Cir. 2017) [hereinafter *Martoma I*]; *Salman v. United States*, 137 S. Ct. 420 (2018); *United States v. Martoma*, 894 F.3d 64 (2d Cir. 2018) [hereinafter *Martoma II*]. But even still, uncertainty remains. Specifically, in *Martoma II*, the Second Circuit declined to decide whether *Salman* abrogated *Newman*'s "meaningfully close personal relationship" standard. 894 F.3d at 71; *see Salman*, 137 S. Ct. at 428 (quoting *Newman*, 773 F.3d at 452) (finding *Newman*'s holding inconsistent with *Dirks* to the extent it required "that the tipper must also receive something of a

16

'pecuniary or similarly valuable nature' in exchange for a gift to family or friends"); *Newman*, 773 F.3d at 452 (holding that in order to permit an inference of a personal benefit to the tipper, the government must prove that the tipper and the tippee had "a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature").

This unsettled area of insider-trading law amplifies the need for the government to specify its allegations.  While the Indictment includes passing references to personal and familial relationships between certain Defendants and certain alleged co-conspirators, it is wholly deficient in alleging facts supporting an expectation of a personal benefit and the nature of that benefit.  Moreover, the Indictment is silent as to whether the alleged relationships form the basis for the "personal benefit" inference or if the Defendants purportedly expected some other personal benefit as a result of the alleged disclosure of material, nonpublic information to the alleged tippees.

For example, is the government alleging that Cameron Collins and CC-6 had a "meaningfully close personal relationship" sufficient to permit an inference of a personal benefit merely because Cameron Collins and CC-1 were allegedly "friends with" CC-6?  *See* Indictment ¶ 6 (including no factual support regarding the nature or duration of the alleged friendship between Cameron Collins, CC-1, and CC-6).  Or will the government allege and attempt to prove at trial that Cameron Collins expected some other personal benefit (e.g., a share in the proceeds) from CC-6 as a result of the alleged disclosure of material, nonpublic information?  The potential for unfair surprise is tremendous.  *See Bortnovsky*, 820 F.2d at 574 (stating that a purpose of a bill of particulars is "to prevent surprise").  Similar questions arise for the other securities fraud counts charged in the Indictment, see *id.* ¶ 47, as the government has failed to specify the nature

of the personal benefit expected by each Defendant as a result of each alleged disclosure of material, nonpublic information to the alleged tippees.  These questions must be answered in a bill of particulars.

Moreover, the government's silence on this issue represents a stark departure from other insider-trading cases in this District in which the government has specified its personal benefit allegations.  *See, e.g.*, Gov't Ltr. at 2, *United States v. Martoma*, No. 12 Cr. 973 (PGG) (S.D.N.Y. March 15, 2013), ECF No. 28 (voluntarily providing particulars and stating that "[t]he Government alleges that Dr. Gilman directly and indirectly benefited by providing Inside Information to Martoma through (1) financial payments made by the Gerson Lehrman Group to Gilman for consultations with Martoma and (2) the development of a perceived friendship with Martoma."); Bill of Particulars at 1, 5, *United States v. Newman*, No. 12 Cr. 121 (RJS) (S.D.N.Y. Aug. 29, 2012), ECF No. 111 (providing particulars concerning "the nature of the benefit received by the tippers of the information" such as "career advice and actual assistance – as well as promises of future assistance – with opportunities to work in the securities industry" and "to maintain a personal friendship"); Bill of Particulars at 1, 5, *United States v. Steinberg*, No. 12 Cr. 121 (S.D.N.Y. Sept. 18, 2013), ECF No. 299 (same); Bill of Particulars at 4-5, *United States v. Gupta*, No. 11 Cr. 907 (S.D.N.Y. April 9, 2012), ECF No. 47 (stating that the personal benefit included, *inter alia*, furthering the friendship between tipper and tippee, the cultivation of a "personal and business relationship" given the tippee's status and connections in business, and the defendant's hope that the tippee would help him recoup some or all of his losses in an investment with the tippee).  There is no reason why the government should not be required to provide a similar level of detail here.  This information is necessary for the Defendants to adequately prepare their defense and to avoid unfair surprise at trial.

## **CONCLUSION**

For the foregoing reasons, the Court should order the government to provide a bill of particulars specifying:

a. the date, time, sender, recipient(s), locations, and amount (if applicable) of the wire communication serving as the basis for the wire fraud alleged in Count Ten;

b. for each count charged in the Indictment, every act in furtherance of that count committed in the Southern District of New York;

c. the "others" to whom Rep. Collins anticipated Cameron Collins would disclose the material, nonpublic information, as alleged in paragraphs 10, 23, and 45(a) of the Indictment;

d. the "others" to whom Rep. Collins and Cameron Collins anticipated Mr. Zarsky would disclose the material, nonpublic information, as alleged in paragraph 10 of the Indictment;

e. The personal benefit expected by Rep. Collins as a result of the alleged disclosure of material, nonpublic information to Cameron Collins, Mr. Zarsky, CC-1, CC-2, CC-3, CC-5, and CC-6, that forms the basis for the securities fraud alleged in Counts Two through Eight, and whether Rep. Collins was aware of the existence of CC-3, CC-5, and/or CC-6 and whether he was aware that Mr. Zarsky, CC-1, CC-2, CC-3, CC-5, or CC-6 owned Innate shares;

f. The personal benefit expected by Cameron Collins as a result of the alleged disclosure of material, nonpublic information to Mr. Zarsky, CC-1, CC-2, CC-3, CC-5, and CC-6, that forms the basis for the securities fraud alleged in Counts Three through Eight, and whether Cameron Collins was aware of the existence of CC-3 and/or CC-5 and that they owned Innate shares; and

g. The personal benefit expected by Mr. Zarsky as a result of the alleged disclosure of material, nonpublic information to CC-2, CC-3, and CC-5, that forms the basis for the securities fraud alleged in Counts Five through Seven.

Dated:  February 8, 2019

Respectfully submitted,

Rebecca M. Ricigliano
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 895-4268
Email: rricigliano@crowell.com

Thomas A. Hanusik
Patrick S. Brown (admitted *pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2530
Email: thanusik@crowell.com

*Attorneys for Cameron Collins*

Jonathan B. New
BAKER HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4650
Email: jnew@bakerlaw.com

Jonathan R. Barr (admitted *pro hac vice*)
Kendall E. Wangsgard
BAKER HOSTETLER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 861-1534
Email: jbarr@bakerlaw.com

*Attorneys for Christopher Collins*

Mauro M. Wolfe
Amanda L. Bassen
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036
Telephone: (212) 692-1017
Email: mmwolfe@duanemorris.com

*Attorneys for Stephen Zarsky*

20